STATE of Wisconsin, Plaintiff-Respondent,

v.

James H. HORNUNG, Defendant-Appellant.

Court of Appeals

*No. 99–0300–CR. Submitted on briefs June 21, 1999.—Decided July 20, 1999.*

(Also reported in 600 N.W.2d 264.)

469

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general of Madison.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. James H. Hornung appeals a judgment. of conviction for three counts of sexual exploitation of a child, and one count each of child enticement and possession of child pornography, contrary to §§ 948.05(1)(a), 948.07(1) and 948.12, STATS., respectively. Hornung further appeals an order denying his postconviction suppression motion. Hornung argues that the trial court erred by denying his various motions to suppress certain statements and evidence obtained as the fruit of these statements. Hornung claims that the statements, made to police detectives during Hornung's interrogation, were obtained in violation of his Sixth Amendment right to counsel. Because Hornung properly invoked his Sixth Amendment right to counsel, any subsequent questioning was improper. We therefore reverse the judgment and remand to the circuit court with directions to grant Hornung's motion to suppress, and for further proceedings consistent with this decision.

## I. BACKGROUND

On January 2, 1997,[1] the State filed a criminal complaint and warrant against Hornung for sexual exploitation of a child and second-degree sexual

---

[1] The complaint is dated January 2 and date-stamped with the clerk on January 3, 1997.

assault.[2] Hornung surrendered to his probation agent on January 24, 1997; however, prior to turning himself in, Hornung asked his ex-wife to contact his attorney, Jeffrey Jackomino, for representation in the matter. Upon surrendering to his probation agent, Hornung was taken to the Marathon County Jail for booking.

Upon his arrival at the Marathon County Jail, Hornung contends that he asked the booking officer, David Landretti, if he could phone his attorney. This contention remains in dispute as Landretti was unable to recall whether Hornung asked to call his attorney during booking; however, Landretti testified that, given the amount of inmates processed that day, "[m]ore than likely . . . I would not have allowed [the phone call]." Hornung further contends that after the booking, while being fingerprinted, he made his second request to call his attorney but was told that the officer was too busy and would try later. Before his transport to Oneida County, Hornung asserts that he again asked to call his attorney. Landretti testified that had Hornung asked to make a phone call at the time he was being released to Oneida County authorities, his request would have been denied for security reasons. Regardless, without being able to contact his attorney, Hornung was transferred to the Oneida County Sheriff's Office for interrogation.

Oneida County Detective Jeff Hoffman testified at hearing that at some point, prior to the administration

---

[2] The State filed an amended complaint on February 19, 1997, charging Hornung with additional counts of sexual exploitation of a child, second-degree sexual assault and child enticement. A plea bargain was ultimately made, whereby Hornung entered various pleas other than not guilty and was convicted of the five felonies from which Hornung appeals.

of Hornung's *Miranda*[3] rights, Hornung asked if Hoffman "thought that he should have an attorney." Hoffman contends that he left the decision to Hornung and Hornung decided not to call an attorney. Subsequently, and almost immediately after the administration and subsequent waiver of Hornung's *Miranda* rights, Hoffman further testified that Hornung asked to use the telephone to "contact some family member and also Jeff Jackomino and just let them know that he was no longer in the Marathon County jail." On cross-examination, Hoffman testified that he knew Jackomino to be an attorney who practiced criminal law. Despite this knowledge, Hoffman asked Hornung if he could wait a little while to make the requested call, to which Hornung allegedly agreed. Upon termination of Hoffman's interrogation of Hornung, Hoffman testified that he never allowed Hornung his phone call, nor did he recall informing anyone of Hornung's request.

Hoffman obtained various incriminating statements from Hornung. Hoffman also obtained Hornung's consent to search a storage locker containing further incriminating evidence.

Hornung testified that he made several requests for a phone call at the conclusion of Hoffman's interrogation and at various times that evening. Hornung contends, however, that he was first told that the officers were too busy, and then informed that he could only call an attorney and that an attorney would not be in his office during the evening nor on the weekend. Hornung testified that on Monday morning, January 27, he again requested to call his attorney but was told

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

that his attorney would not be in during the early morning hours.

Thereafter, Hornung was again advised of and waived his *Miranda* rights before interrogation by Oneida County Detective Glenn Schaepe. Schaepe testified that during the interrogation, Schaepe was notified that Hornung's attorney, Jackomino, had arrived at the Oneida County Sheriff's Department to represent Hornung. After conferring with the district attorney, Schaepe refused to allow Jackomino access to Hornung, as Hornung had not directly asked to speak to his attorney. Although Schaepe testified that Hornung never made a direct request to speak to an attorney, Schaepe also testified to a general awareness of Hornung's requests to speak to his attorney, stating that "Mr. Jackomino's name may have come up in conversation."

Schaepe further testified that upon returning to Hornung's interrogation, Hornung asked if contact had been made with Jackomino. Schaepe testified that despite some discussion regarding an attorney, Hornung agreed to continue with the interrogation. Thereafter, Schaepe suggested that Hornung give a written or tape recorded statement. Hornung again questioned whether he should have an attorney before giving a written or tape recorded statement. Schaepe testified that although Hornung did not directly ask to call his attorney, Schaepe "decided at that point that he could call . . . his attorney if that is what he wanted." Hornung was ultimately allowed direct contact with his attorney. Jackomino instructed Hornung not to give any further statements and the interrogation then ended. As with Hoffman's interrogation, Schaepe's interrogation uncovered incriminating statements and

474

consent to search a storage locker containing further incriminating evidence.

The trial court found that Hornung's comments and his references to telephones and an attorney were not clear and unambiguous. The trial court, referring to Hornung's comments, stated:

> They are not clear and unambiguous requests for counsel because in each situation where an attorney was mentioned and a telephone was mentioned it was made in the context of the defendant wanting to transmit outgoing messages advising others. "I want to use the phone to tell people I have been transferred." The purpose of the defendant's request to use the telephone is to give others collateral information. At no time did I hear the officers testify that the defendant said, "I want to use the phone to call my lawyer to see if I should talk to you." You could, I suppose, in some circumstances raise some inferences, but let's keep in mind that the officers were being given mixed messages that could support a number of inferences.

On the grounds stated, the trial court dismissed Hornung's motion to suppress and postconviction motion to vacate judgment.

## II. STANDARD OF REVIEW

This appeal involves the application of facts to federal and state constitutional principles, which we review independently of the trial court. *State v. Lee,* 175 Wis. 2d 348, 354, 499 N.W.2d 250, 252 (Ct. App. 1993); *see also State v. Clappes,* 136 Wis. 2d 222, 235, 401 N.W.2d 759, 765 (1987). However, historical factual determinations made by the trial court will be

affirmed unless clearly erroneous. Section 805.17(2), STATS.; *Lee*, 175 Wis. 2d at 354, 499 N.W.2d at 252.

## III. ANALYSIS

Under the Sixth Amendment, a person formally charged with a crime has a right to counsel at every critical stage of the proceedings. *See Massiah v. United States*, 377 U.S. 201, 205 (1964). The Sixth Amendment right to counsel attaches when a warrant is issued or a complaint filed. *See State v. Harris*, 199 Wis. 2d 227, 235 n.3, 544 N.W.2d 545, 548 n.3 (1996); *see also Jones v. State*, 63 Wis. 2d 97, 104, 216 N.W.2d 224, 227 (1974). However, once the Sixth Amendment right to counsel has attached, a criminal defendant must seek to exercise this right. *See Patterson v. Illinois*, 487 U.S. 285, 290 (1988). The attachment of the Sixth Amendment right to counsel, coupled with a criminal defendant's assertion of this right, prohibits the government from initiating any contact or interrogation concerning the charged crime, and any subsequent waivers by a defendant during police-initiated contact or interrogation are deemed invalid. *See Michigan v. Jackson*, 475 U.S. 625, 636 (1986).

The State concedes that Hornung's Sixth Amendment right to counsel attached on January 2, 1997, when a criminal complaint and warrant were filed against Hornung. The issue in this case, therefore, is whether Hornung effectively asserted his Sixth Amendment right to counsel, thereby triggering its protections.

Hornung argues that he asserted his right to counsel when, on the morning of January 24, 1997, he asked his ex-wife to retain Jackomino to represent him on the

charges for which he was surrendering.[4] Hornung further argues that he continued to assert his right to counsel and ultimately asked detective Hoffman if he could call Jackomino, whom Hoffman admittedly knew to be a criminal defense attorney. Hoffman thereafter encouraged Hornung to make the call later; however, upon completion of the interrogation, Hoffman neither allowed Hornung his requested call nor notified Hornung's jailers of the request.

The State, in contrast, argues that Hornung never clearly asserted his right to counsel and, as such, made valid waivers of this right. The State cites various cases discussing the need for an "unequivocal and unambiguous" request for counsel; however, these cases discuss the invocation of the right to counsel under the Fifth Amendment (pre-charging) as opposed to what may be required under the Sixth Amendment (post-charging). In *Patterson*, a Sixth Amendment case cited by the State, the Court indicated that a defendant must seek "to exercise his right to have counsel present." *Id.* at 290. In *Patterson*, the petitioner attempted to claim that his Sixth Amendment right to counsel arose with his indictment, therefore supplanting the need to directly request counsel. The Court stressed, however, the need to exercise this right, stating that "[h]ad peti-

---

[4] Although Hornung claims that the assertion of his right to counsel came when he asked his ex-wife to call his attorney, the focus of the inquiry, under these facts, necessarily remains on whether or not Hornung's Sixth Amendment rights were effectively asserted to the police. In *Michigan v. Jackson*, 475 U.S. 625 (1986), the Court noted that "the Sixth Amendment concerns the confrontation between the State and the individual." *Id.* at 634. As such, the *Jackson* Court held that "Sixth Amendment principles require that we impute the State's knowledge from one state actor to another." *Id.*

tioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting)." *Id.* at 291. Any language requiring an "unequivocal or unambiguous" request for counsel, however, is conspicuously absent from the *Patterson* Court's discussion of the petitioner's Sixth Amendment right to counsel.

The Court stressed the importance of an accused's Sixth Amendment right to counsel in *Jackson*, stating that "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before." *Id.* at 631. The *Jackson* Court stated:

> Indeed, after a formal accusation has been made—and a person who had previously been just a 'suspect' has become an 'accused' within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

*Id.* at 632. Further, the Court intimated that the protections afforded suspects under the Fifth Amendment would apply with "even greater force" where the Sixth Amendment is concerned. *Id.* at 636; *see also State v. Dagnall*, 228 Wis. 2d 495, 503, 596 N.W.2d 482 (Ct. App. 1999). It follows, therefore, that the strict requirements for "unequivocally and unambiguously" asserting one's right to counsel under the Fifth Amendment are somewhat less stringent under the Sixth Amendment. This court recently held:

> [W]hile the precise degree of clarity required of right-to-counsel invocations under the Sixth Amendment appears to be unsettled in the law, it does appear that greater leeway is afforded charged defendants in this respect (under the Sixth Amendment) than uncharged suspects (under the Fifth Amendment) during custodial questioning.

*Dagnall*, 228 Wis. 2d at 504–05.

Even under the Fifth Amendment's stringent standards, the Court has recognized that "[a]lthough a suspect need not 'speak with the discrimination of an Oxford don' . . . he must articulate his desire to have counsel present sufficiently clearly that *a reasonable police officer in the circumstances* would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis added).

Under the instant facts, Hornung's assertion of his Sixth Amendment right to counsel was evident during Hoffman's interrogation.[5] Hornung initially asked if Hoffman "thought he should have an attorney," and it is undisputed that Hornung asked if he could call Jackomino, whom Hoffman knew to be a criminal defense attorney. Clearly, given the circumstances, a reasona-

---

[5] Hornung's assertions regarding his repeated requests to call his attorney, as described in the fact section of this opinion serve to emphasize the egregious conduct on the part of the police, in denying Hornung access to counsel. In fact, during Hornung's interrogation by Detective Schaepe on the following Monday, Hornung's attorney presented himself at the police station, but was denied access to Hornung. These facts, though egregious, are irrelevant to the fact that any contact following the assertion of his right to counsel, during the interrogation with Detective Hoffman, violated Hornung's rights. *See Jackson*, 475 U.S. at 629–30.

ble officer should have known that Hornung's Sixth Amendment right to counsel was sufficiently asserted when Hornung asked to call Jackomino. Thereafter, all questioning regarding the charges should have ceased. As Hornung's Sixth Amendment right to counsel was effectively triggered by its attachment and subsequent assertion, any subsequent inculpatory statements or fruits therefrom must be suppressed as violative of Hornung's constitutional rights.

As noted, once the Sixth Amendment has attached and been asserted, any subsequent waiver of the right to counsel is invalid, unless contact is initiated by the defendant. *Jackson*, 475 U.S. at 636. Therefore, the State's claim that Hornung effectively waived his right to counsel is without merit.

We therefore reverse the judgment and remand to the circuit court with directions to grant Hornung's motion to suppress any incriminating statements or fruits therefrom obtained by police after the invocation of Hornung's Sixth Amendment right to counsel, and for trial or such further proceedings as the court may deem appropriate consistent with this opinion.

*By the Court.*—Judgment and order reversed and cause remanded with directions.