STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher D. ANSON, Defendant-Appellant.

Court of Appeals

*No. 01–2907–CR. Oral argument August 22, 2002.—Decided October 9, 2002.*

2002 WI App 270

(Also reported in 654 N.W.2d 48.)

435

On behalf of the defendant-appellant, there were briefs and oral argument by *Steven J. Watson* of *Steven J. Watson Law Office* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David H. Perlman*, assistant attorney general. There was oral argument by *David H. Perlman*.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. In *Patterson v. Illinois*, 487 U.S. 285, 292 (1988), the United States Supreme Court observed that a waiver of a Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or

privilege." The Court held that since Patterson had been informed that he had been indicted and had been given his Fifth Amendment *Miranda*[1] warnings and chose to speak with the police and prosecutors anyway, he waived his Sixth Amendment right to counsel. Here, when police investigators initiated a conversation with Christopher D. Anson they did not tell him that charges had been filed or that an arrest warrant had been issued. In fact, when he asked the investigators if he was under arrest, the investigators informed Anson that he was not under arrest. The investigators also did not read Anson his *Miranda* warnings. Under these circumstances, Anson could not have made a "knowing" choice to relinquish his Sixth Amendment rights. We therefore reverse the judgment and remand with directions as hereafter described.

¶ 2. The following facts are relevant to this appeal. On July 26, 2000, the State issued an arrest warrant for Anson. On July 26, the State charged Anson with three counts[2] of sexual contact with a child under the age of sixteen in violation of Wis. Stat. § 948.02(2) (1999–2000).[3] Each count of the complaint is distinguished by time and place. Counts one and two relate to an incident allegedly occurring "on a glider type chair" on the "porch of the home." Count three relates to the allegation that "the defendant later came back downstairs" and "touched [the victim's] vagina while she was lying on a couch."

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

[2] The State also charged Anson with three counts of incest for the same conduct in violation of Wis. Stat. § 948.06(1). Anson's appeal does not involve these charges.

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 3. In early August, an officer from the Fontana police department contacted the Orange County California sheriff and asked for assistance in getting a statement from Anson. On August 3, the Orange county investigator who initiated the discussion with Anson first learned about the warrant for Anson's arrest. On August 7, the officer sent a fax that contained an eight-page narrative, a copy of the criminal complaint, and a Xerox of a photo of Anson and the victim to the investigator. On August 8, the investigator and his partner went to Anson's workplace, both to get a statement from him regarding an alleged sexual assault that had occurred in Wisconsin and ultimately to arrest Anson. Anson agreed to speak with the investigators.

¶ 4. At the beginning of the interrogation, Anson asked, "I haven't been charged with anything yet," and the investigator responded, "Right." The investigator then asked Anson, "You understand you are not under arrest right now?" Anson responded affirmatively.

¶ 5. After a preliminary discussion, the interrogation turned to the circumstances surrounding the alleged contact between Anson and the alleged victim of the sexual assault. The investigator asked Anson why the victim would make up such a story and Anson stated that she had some grounds for the allegation. Anson then admitted to the investigators that the victim took his hand and placed it over her clothes on her vagina and he left his hand there for a period of time. Anson told the investigators that from his point of view nothing happened on the porch swing. After the interview, the investigators placed Anson under arrest.

¶ 6. Prior to trial, Anson filed a motion to suppress the statements he made to the investigators. The trial court denied the motion. At trial, the inculpatory

statements were introduced through the testimony of one of the investigators. Anson also took the stand at trial and testified, as he had told the investigators, that the victim had taken his hand and placed it on her vagina. Anson denied ever having put his hands up the victim's shirt or touching her breasts on the porch swing.

¶ 7. A jury convicted Anson on count three of the information, second-degree sexual assault of a child in violation of Wis. Stat. § 948.02(2). The jury found Anson not guilty on counts one and two of the information. Anson now appeals the judgment of conviction for count three of the information.

¶ 8. This appeal involves the application of facts to federal constitutional principles. We review the trial court's application of constitutional principles to historical facts de novo. *State v. Hornung*, 229 Wis. 2d 469, 475, 600 N.W.2d 264 (Ct. App. 1999). However, historical factual determinations made by the trial court will be affirmed unless clearly erroneous. *Id.* at 475–76.

¶ 9. This case implicates Anson's Sixth Amendment right to counsel in a pretrial, post-charge setting. The Sixth Amendment right to counsel offers constitutional safeguards to the accused after the State initiates adversarial proceedings. *State v. Dagnall*, 2000 WI 82, ¶ 29, 236 Wis. 2d 339, 612 N.W.2d 680. The Sixth Amendment protects the unaided layperson at critical confrontations with his expert adversary, the government, after the adverse positions of government and defendant have solidified. *Id.* This is because "[i]t is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed

in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

¶ 10. The Sixth Amendment right to counsel extends to pretrial interrogations. *Dagnall*, 2000 WI 82 at ¶ 30. The Sixth Amendment right thus protects a defendant during the early stages of the adversarial process "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Id.* (citation omitted). Police and prosecutors have an affirmative duty not to circumvent or exploit the protections guaranteed by the right. *Id.*

¶ 11. In Wisconsin, the right to counsel arises after the State initiates adversarial proceedings by the filing of a criminal complaint or the issuance of a warrant. *Id.* Although the right to counsel attaches at the time a charge is made, it is not self-executing. A charged defendant who does not have counsel must invoke, assert or exercise the right to counsel to prevent the interrogation. *Id.* at ¶ 46. The attachment of the Sixth Amendment right to counsel, coupled with the accused's invocation of the right, prohibit the State from initiating any contact or interrogation concerning the charged crime and any subsequent uncounseled waivers by a defendant during police-initiated contact or interrogation are deemed invalid. *Hornung*, 229 Wis. 2d at 476.

¶ 12. A defendant can waive the right to counsel as long as the waiver is "knowing and intelligent." *Patterson*, 487 U.S. at 292. If a defendant "knowingly and intelligently" decides to face the State's officers during questioning without the aid of counsel, then the

442

uncounseled statements the defendant makes can be admitted at trial. *Id.* at 291. If the waiver is invalid, however, any uncounseled statements elicited from the accused after the right to counsel has attached violate the accused's Sixth Amendment rights and cannot be admitted at trial. *See Hornung*, 229 Wis. 2d at 480. Thus, at the onset of a post-charge, pretrial interrogation, the accused must make a determination as to whether he or she will assert the right to counsel and terminate the questioning until an attorney is present or waive the right to counsel and proceed with the interrogation without the assistance of counsel.

¶ 13. The State concedes that Anson's Sixth Amendment right to counsel attached at the time the State issued a warrant for his arrest. On appeal, one dispute between the parties is whether Anson invoked his right to an attorney when he stated early in the interrogation, "I have my side of the story, but I want to talk to my lawyer on my side of the story." The degree of clarity with which a defendant must invoke the Sixth Amendment right to counsel during interrogation remains an unsettled area of law. For the purposes of the Fifth Amendment, the Supreme Court has held that a defendant must invoke the right to counsel "unambiguously." *See Davis v. United States*, 512 U.S. 452, 459 (1994). When analyzing the Sixth Amendment, however, the Court has determined that it must broadly interpret an accused's request for counsel because the Court presumes that the accused requests the lawyer's services at every critical stage of the prosecution. *See Michigan v. Jackson*, 475 U.S. 625, 633 (1986). Because we must decide cases on the narrowest possible ground, *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989), we do not address whether the require-

ments for an invocation of the Sixth Amendment right to counsel are identical to or less stringent than the requirements for a Fifth Amendment invocation. Correlatively, we also do not decide whether Anson's statement constituted an invocation of counsel.

¶ 14. Rather, there exists another issue with which we are squarely presented and that is whether Anson knowingly waived his right to counsel. Stated another way, the issue is whether a defendant must be sufficiently aware of the right to have counsel present during police questioning and of the possible consequences of a decision to forgo the aid of counsel in order to make the "choice" to knowingly waive the right. Our supreme court has recognized that a defendant must be aware of the right to counsel in order to be able to make the decision to invoke the right. In *Dagnall*, the court determined that the Sixth Amendment protected the defendant from police interrogation because the State had filed charges and the police were aware that the defendant had retained an attorney. *Dagnall*, 2000 WI 82 at ¶ 4. In the process of reaching its conclusion, the court noted that after the right to counsel has attached,

> [t]he right must be "invoked" by the accused to terminate police questioning before an attorney has been retained or appointed for those specific charges, *provided the accused has been fully alerted to the right to have an attorney and the right not to answer questions.* This normally would entail *Miranda* warnings.

*Dagnall*, 2000 WI 82 at ¶ 52 (emphasis added). Although *Miranda* warnings may not be necessary at the onset of all noncustodial police interrogations, the court logically concluded that an accused must be aware that the right to counsel is available in order to decide

whether to invoke it and request the presence of counsel or to waive it and proceed without counsel.

██

¶ 15. As we stated at the outset of our opinion, a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson*, 487 U.S. at 292 (citation omitted). In other words, the defendant must "kno[w] what he is doing" so that "his choice is made with eyes open." *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). In *Patterson*, the Court announced a "pragmatic approach" to the waiver question—asking what purposes a lawyer can serve at the particular stage of the proceedings in question and what assistance he or she could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel and the type of warnings and procedures that should be required before a waiver of that right will be recognized. *Patterson*, 487 U.S. at 298. The proper inquiry for determining the validity of a waiver is whether "the accused, who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel[.]" *Id.* at 292–93. An accused's waiver of the right to counsel is "knowing" when he or she is made aware of these basic facts. *Id.* at 298.

¶ 16. The *Patterson* Court addressed the issue of whether a defendant, whose Sixth Amendment right to counsel had attached, could waive the right to counsel at post-arraignment questioning after receiving *Miranda* warnings. *Patterson*, 487 U.S. at 292. The Court held that a waiver of *Miranda* rights adequately

445

satisfied the requirements for a valid waiver under either the Fifth or Sixth Amendments because "[a]s a general matter, then, an accused who is [given *Miranda* warnings] has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 487 U.S. at 296. Because the defendant knew that the government had filed charges, the Court expressly declined to tackle the question of whether an accused must be told that he has been indicted before a post-indictment Sixth Amendment waiver will be valid. *Id.* at 295 n.8.

¶ 17. Since the *Patterson* decision, several courts have addressed the question of whether an accused must be informed of an indictment before a post-indictment Sixth Amendment waiver will be valid. The courts have relied on the holding in *Patterson* to support the conclusion that a valid waiver of Sixth Amendment rights requires no more than *Miranda* warnings. *Norman v. Ducharme*, 871 F.2d 1483, 1486–87 (9th Cir. 1989) (accused's waiver knowing after police showed the accused a copy of his arrest warrant, read him the *Miranda* warnings, and the accused signed a *Miranda* waiver form); *Riddick v. Edmiston*, 894 F.2d 586, 591 (3rd Cir. 1990) (accused's waiver valid where accused had been read *Miranda* warnings and had signed a waiver of extradition that had mentioned the charge against him even though authorities had not specifically informed him of his indictment); *Quadrini v. Clusen*, 864 F.2d 577, 587 (7th Cir. 1989) (accused understood right to have counsel present and fully intended to waive it where accused had been repeatedly advised of his *Miranda* rights and repeatedly waived them, and had spoken with a public defender who

446

advised the accused not to speak with the police and accused chose to disregard the advice); *United States v. Carrasco*, 887 F.2d 794, 818 (7th Cir. 1989) (accused's waiver valid because *Miranda* warnings were given); *United States v. Charria*, 919 F.2d 842, 848–49 (2nd Cir. 1990) (accused's waiver valid where he understood he was under arrest and the authorities had read him *Miranda* warnings).

¶ 18. In each of these cases in which the court affirmed a waiver of the defendant's Sixth Amendment right to counsel, the defendants had been read the *Miranda* warnings and had been aware that they were in custody, under arrest, or that charges had been filed. By virtue of the *Miranda* warnings, these defendants understood their right to counsel and the consequences of abandoning their right. Even if they did not know they had been formally charged with a crime, these defendants had sufficient information so that they could comprehend the gravity of their situation and the nature of their Sixth Amendment right to counsel.

¶ 19. From the above cited waiver cases, coupled with our supreme court's observation in *Dagnall*, we reach the following conclusion: At the onset of post-charge pretrial police interrogations, the accused must be made aware that the adversarial process has begun and that he or she can request the assistance of counsel at the onset of post-charge pretrial police interrogations. This can be accomplished by informing the accused that he or she has been formally charged with a crime, by reading to the accused the *Miranda* warnings, or by anything else that would inform the accused that the adversarial process has begun. By giving *Miranda* warnings, the *Patterson* Court reasoned that an individual is told that he or she has the right to an attorney

447

and any statement he or she makes can be used in subsequent criminal proceedings. *Patterson*, 487 U.S. at 293. Or, by telling the accused that a complaint has been filed or that an arrest warrant has been issued, a reasonable layperson would comprehend that the government has committed itself to prosecute and the positions of the adversaries have solidified. *See Kirby*, 406 U.S. at 689. As a result, any further interrogation can only be designed to buttress the government's case; authorities are no longer simply attempting "to solve a crime." *United States v. Mohabir*, 624 F.2d 1140, 1148 (2nd Cir. 1980), *overruled on other grounds by Patterson*, 487 U.S. at 297. Any voluntary, uncounseled statements made after such knowledge or after a *Miranda* warning can constitute a valid waiver of the Sixth Amendment right to counsel.

¶ 20. In direct contrast to the defendants in both *Dagnall* and the waiver cases, the police did not read Anson the *Miranda* warnings nor was Anson made aware that the State had filed charges and issued an arrest warrant. The investigators went to Anson's workplace with the purpose of interrogating him and then arresting him. Prior to beginning the questioning, the investigators misled Anson into believing the State had not yet filed charges. The investigators told Anson that he was not under arrest. Because he was not under arrest, the officers did not read Anson the *Miranda* warnings. According to the State, Anson remained calm and relaxed throughout the interrogation because he was not aware that the State had filed charges and he was not in custody. At the onset of the interrogation, Anson did not know nor could he have known that the adversarial process had begun and he had the right to choose to terminate the interrogation until he had an attorney present.

¶ 21. The State should not be permitted to circumvent the Sixth Amendment protections by undertaking a pretrial post-charge interrogation of a defendant who had not been read *Miranda* warnings, had not been informed of the charges filed against him or did not have sufficient information to know that he had the right to have an attorney present. We hold that the State violated Anson's Sixth Amendment right to counsel when it undertook its interrogation, and accordingly, the trial court erred when it failed to suppress Anson's statements.

¶ 22. While the State concedes that Anson's Sixth Amendment right to counsel attached on July 26, 2000 when the State filed its complaint, the State argues that Anson did not need to be informed of his right to counsel because the setting in which Anson made his statement was noncustodial. The State seems to reason that noncustodial settings are not adversarial in nature, but instead foster more of a voluntary dialogue. The State apparently contends that Anson did not need to know that the State's position had solidified because of the nonconfrontational setting in which the statement was given.

¶ 23. We must reject this argument. The Sixth Amendment right to counsel attaches upon the initiation of adverse judicial proceedings and does not depend upon whether police questioned the defendant in a custodial or noncustodial setting. The Supreme Court has explicitly declined to read a custody requirement, a prerequisite to the attachment of *Miranda* rights, into the Sixth Amendment. *United States v. Henry*, 447 U.S. 264, 273 n.11 (1980). The clear rule governing the Sixth Amendment right to counsel is that once adversarial judicial proceedings have commenced against an indi-

vidual, which in Wisconsin is at the time the State files charges or issues a warrant, the individual has a right to legal representation when the State interrogates the individual. *See Brewer v. Williams*, 430 U.S. 387, 400–01 (1977).

¶ 24. The State also raises another argument. It points out that in *Patterson*, the Court viewed the Sixth Amendment right as a spectrum that at one end recognizes the enormous importance and role an attorney plays at trial, and at the other end acknowledges that there are proceedings for which an attorney provides little aid or assistance. *See Patterson*, 487 U.S. at 298. According to *Patterson*, the assistance of an attorney during questioning is less important because the dangers and disadvantages of self-representation during questioning are less substantial and more obvious to an accused than they are at trial. *Id.* at 299–300. The State seems to argue that counsel's services were not important when the investigators questioned Anson.

¶ 25. While it is true that the *Patterson* Court commented about the rather limited role that attorneys play during questioning, as compared to during trial, the Court did note that the accused must be made "aware of the 'dangers and disadvantages of self-representation' during postindictment questioning." *Id.* (citation omitted). This makes perfect sense. Even if an attorney's role is limited, once the State has initiated formal proceedings against an accused, the adversarial process has begun and the accused is entitled to rely on an attorney to act as a medium between himself or herself and the adversary, the State. We reject this argument by the State.

¶ 26. In this case, Anson took the stand on his own behalf. Therefore, our next task is to consider

whether, by taking the stand, Anson waived his right against self-incrimination, thereby rendering any error harmless.

¶ 27. This issue is governed by *Harrison v. United States*, 392 U.S. 219 (1968). *Harrison* teaches us that when a defendant takes the stand in order to overcome the impact of illegally obtained and used statements, his or her testimony is tainted by the same illegality that rendered the statements themselves inadmissible. *See State v. Middleton*, 135 Wis. 2d 297, 302, 399 N.W.2d 917 (Ct. App. 1986). If such is the case, the defendant does not waive his or her right against self-incrimination and the testimony should be suppressed. *See id.* at 316–17. The factual basis for such a finding, however, is for the trial court. *See id.* at 322.

¶ 28. Even where the trial court finds that the defendant would have decided to testify regardless of whether or not his or her statements had been suppressed, *Harrison* tells us it does not necessarily follow that the defendant's testimony is purged of the taint of the underlying illegality. On the contrary, *Harrison* teaches us that the natural inference is that the defendant would not have taken the stand and repeated the damaging statements if the prosecutor had not already placed the statements before the jury. *See Harrison*, 392 U.S. at 225–26.

¶ 29. We direct the trial court on remand to hear evidence and make findings of historical fact concerning whether Anson testified in order to overcome the impact of the incriminating statements he made to the investigators. The State bears the burden of showing that its use of the unlawfully obtained statements did not induce Anson's testimony. *See id.* at 225. Further, even if the trial court finds that Anson would have testified anyway, *Harrison* dictates that for the State to

meet its burden of proving that Anson's testimony was obtained by means sufficiently distinguishable from the underlying constitutional violation, it must dispel the natural inference that Anson would not have repeated the inculpatory statements when he took the stand. *See id.* at 225–26. If the trial court finds that a link in fact exists between the State's constitutional violation and Anson's subsequent decision to take the stand and repeat the inculpatory statements, Anson has not waived his right against self-incrimination and is entitled to a new trial.

¶ 30. The State asserts that even if the statement is suppressed, the error is harmless. A constitutional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *State v. Harvey*, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189 (citation omitted). Thus, we must consider whether a rational jury would have found Anson guilty had his statements been excluded.

¶ 31. We cannot conclude that the error was harmless beyond a reasonable doubt. As the State pointed out during its opening statements, it had no physical evidence to present to the jury. The State's case rested heavily on Anson's inculpatory statements to the investigators. The State's case, exclusive of Anson's testimony, was built primarily on the testimony of the victim, her family and her friends in whom she had confided about the alleged incidents. We cannot say with confidence how the jury weighed this testimony against the unlawfully obtained statements and Anson's own testimony. Without Anson's inculpatory statements, the jury could have assessed the testimony

452

of the State's witnesses and returned a verdict of not guilty. In reaching our conclusion, we note that the only count on which the jury convicted Anson is the count involving the incident about which he had made the incriminating statements. In the two other counts, where the sole evidence consisted of testimony, the jury found Anson not guilty. Based on our reading of the record, we cannot conclude that a rational jury would have found Anson guilty absent his statements. We therefore reverse the judgment of conviction and remand to the trial court for further proceedings consistent with this decision.

*By the Court.*—Judgment reversed and cause remanded with directions.