**Anton K. JOHNSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–0510–CR–518.

Court of Appeals of Indiana.

July 28, 2006.

Charles E. Stewart, Jr., Appellate Public Defender, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

---

1. Ind.Code Ann. § 35–42–1–3 (West, PREMISE through 2005 1st Regular Sess.).

2. I.C. § 35–42–1–1 (West, PREMISE through 2005 1st Regular Sess.).

## OPINION

FRIEDLANDER, Judge.

Anton K. Johnson appeals his conviction of Voluntary Manslaughter,[1] a class A felony, and Murder.[2] Upon appeal, Johnson challenges the admission into evidence of his confession given to police.

We affirm.

The facts favorable to the convictions are that on the morning of January 15, 2003, Danielle Moten and Jamall Reggans were preparing to move into a townhouse at 1240 Aetna Street in Gary, Indiana. They went to the townhouse of Regina West at 1248 Aetna and asked to use the phone. West was Johnson's girlfriend. Meanwhile, Eric Upshaw drove Johnson to West's house to give Johnson, who was leaving town, a chance to "pick up some money" from West and to tell her goodbye. As the two men neared West's house, Johnson called her on the phone. West told Johnson there was someone on the other line and she asked him to come inside. When Johnson entered the apartment, Moten and Reggans were still there. Johnson took a handgun out of his back pocket and placed it on the dining room table. He took off his jacket and draped it over a chair. He then retrieved his gun and accompanied West upstairs for a few moments.

At about that time, and after Johnson and West had returned downstairs, another woman—Tasha Johnson[3]—entered West's townhouse. Tasha asked Johnson if he had her money. Johnson did not respond. Tasha stated, "you must have my money. You are over here." *Tran-*

3. There is no indication in the record that Tasha Johnson was related to the defendant.

*script* at 50. Moten described the next few moments as follows: "He [Johnson] was reaching for his pocket. Regina was like, no, Blackie [West called Johnson by the nickname, "Blackie"]. Don't do that. Jacob is upstairs. He is like, man, I ain't going to shoot her. She [referring here to Tasha] was like, if you are going to shoot me, go ahead and shoot me." *Id.* As the discussion between Johnson and Tasha grew more heated, Moten and Reggans went outside and stood on the front porch. Less than two minutes later, Moten and Reggans heard several gunshots. After a few seconds, West ran out of the house with Johnson following soon thereafter, carrying the aforementioned handgun in his right hand. West crawled underneath a nearby car. Johnson ran to the car and asked West, "Baby, is that your woman?" *Id.* at 51. West yelled "no, Black". *Id.* at 137. Johnson repeated the same question, and West responded in the same manner. Johnson then fired multiple shots, six of which struck West. Johnson got into Upshaw's car and Upshaw drove away.

When Johnson began shooting at West, Moten and Reggans ran away and called police. Moten and Reggans gave statements to the police describing the shooting, consistent with the foregoing statement of facts. Also, each was separately shown a photo array, and each selected a photo of Johnson as that of the shooter.

West and Tasha died as a result of multiple gunshot wounds; Tasha was shot three times and West six times. On January 16, 2003, Johnson was charged with two counts of murder and a warrant was issued for his arrest. Johnson was arrested on that warrant more than a year later, on February 10, 2004. He was taken to the Gary Police Department (the GPD) where he was interviewed by Detective Jack Arnold of the GPD. At the outset of the interview, Detective Arnold used a written advice-of-rights form in advising Johnson of his *Miranda* rights. He provided Johnson with a copy so that Johnson could read along as Detective Arnold completed the rights checklist. The detective explained:

> [T]he top part has location and the date and time and the officer advising him of the rights and the department. That was filled out by me. I gave him this copy. And I had a copy of it. And I asked him to read along with me as I read him his rights. And as I read him his rights, after each right, I told him—I asked him if he had any questions. If he had any questions, I would answer them. If he didn't, for him to go ahead and place his initials after each right, that way I knew he understood each right.

*Id.* at 448. Detective Arnold proceeded in the above-described fashion and advised Johnson of the full panoply of his constitutional rights, including the right to counsel. That right was explained as follows: "You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning." The Exhibits, Exhibit 56. Johnson also was advised, "[i]f you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." *Id.* Johnson indicated he understood those rights, and so signified by placing his initials next to the appropriate lines on the form. Johnson did not request an attorney and proceeded to give a statement.

Johnson stated that he went to West's apartment to "give her a kiss and a hug goodbye." *Id.*, Exhibit 57. He described Tasha's arrival and the ensuing argument substantially as Moten and Reggans had described it. He stated that Tasha

claimed he owed her money "for weed he had been smoking." *Id.* Evidently, she finally tired of his denials and, according to Johnson,

> Tasha Johnson then rushed me, we flipped over the little white table in the living room. By then I went in my back pocket to pull out the gun because I didn't know if Tasha Johnson had her gun. So I pulled mine out she was on top of me we were on the floor I had my finger lightly on the trigger and she was lying on top of me on the floor I started shooting. I pushed Tasha off m on tot eh [sic] floor. I got up seen Ms. West standing in the living room. I asked Ms. West, "What did you do that for?" Ms. West looked at me she smiled and started running I ran after her and I shoot [sic], I don't know how many times but I shot ms. [sic] West outside in the front by her car. I looked at Ms. West and asked her "Why did you try and set me up?" Ms. West didn't answer me so I jumped back up, ran to the car that my cousin, E, was sitting in.

*Id.* Johnson was charged with two counts of murder and convicted as set out above following a jury trial.

 Over Johnson's timely objection at trial, the trial court admitted into evidence Johnson's statement to the police. Johnson contends upon appeal that the trial court erred in doing so because he was not advised at the time he made the statement that he had already been charged with committing the murders.

 Generally, the decision to admit or exclude evidence is a matter committed to the trial court's discretion, and we will reverse only for an abuse of that discretion. *Collins v. State*, 826 N.E.2d 671 (Ind.Ct.App.2005), *trans. denied, cert. denied.* A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances be-

fore it. *Id.* With respect to the admission of a statement containing a confession,

> the State must prove beyond a reasonable doubt the confession was given voluntarily. On review, we look to the totality of the circumstances surrounding the waiver of rights and confession. We focus on whether the waiver or confession was free, voluntary, and not induced by violence, threats, promises, or other improper influences. When considering on appeal the admissibility of a confession, we will uphold the trial court's decision if there is substantial evidence of probative value to support it. We do not reweigh the evidence, and we consider any conflicting evidence most favorably to the trial court's ruling.

*Storey v. State*, 830 N.E.2d 1011, 1015 (Ind.Ct.App.2005). Johnson contends the question of the admissibility of his statement is somewhat unique and controlled by a different principle than the one generally governing statements given after a purported waiver of rights. He contends that an otherwise valid waiver of rights is ineffective if he was not also advised before waiving his rights that he had already been charged with the crime. He cites *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) and *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) in support of this assertion.

Although *Patterson* contains a thorough discussion of the waiver of right to counsel as it relates to the admissibility of a confession, it expressly did *not* discuss the proposition for which Johnson cites it as authority, *viz.*, "we do not address the question whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid. Nor do we even pass on the desirability of so informing the accused—a matter that can be reasonably debated."

*Patterson v. Illinois,* 487 U.S. at 295 n. 8, 108 S.Ct. 2389. Like *Patterson, Jackson* neither involved nor discussed the validity of a post-indictment waiver of rights made at a time when the defendant had already been charged with committing the confessed offense but had not been so apprised. Unlike the instant case, *Jackson* involved a situation in which the defendant had previously asserted his right to counsel. *See Michigan v. Jackson,* 475 U.S. at 636, 106 S.Ct. 1404 ("[w]e thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid"). Thus, *Patterson* and *Jackson* do not endorse the proposition that Johnson asks us establish in Indiana. In fact, *Patterson* can be read to support the opposite result.

■ In *Patterson,* the Court discussed at length the subject of the right to counsel, under the Fifth and Sixth Amendments, during interrogation. The Fifth Amendment provides the right to counsel at custodial interrogations. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Sixth Amendment provides the right to counsel at post-indictment interrogations. "The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment." *Michigan v. Jackson,* 475 U.S. at 629, 106 S.Ct. 1404 (quoting *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984)). This does not mean, however, that the Sixth Amendment right is, for all intents and purposes, entirely separate and distinct from the Fifth Amendment right. The Court explicitly so held. *See, e.g., Patterson v. Illinois,* 487 U.S. at 290–91,

108 S.Ct. 2389 ("[t]he fact that petitioner's Sixth Amendment right came into existence with his indictment, i.e., that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned"). As the Court observed in *Patterson,* either way, i.e., during pre-indictment questioning or post-indictment interrogation, had petitioner requested the assistance of counsel, the interview would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting).

■ In both *Jackson* and *Patterson,* the Court seemed disinclined to consider the advisement that the defendant had been indicted as the measure of the confession's admissibility in this scenario. Instead, "to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required[,]" the Court focused on the question of whether the defendant received a valid advisement of rights at the time he made the confession, and on "asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage[.]" *Patterson v. Illinois,* 487 U.S. at 298, 108 S.Ct. 2389. It also discussed the function of *Miranda* warnings vis-à-vis the post-indictment, Sixth Amendment right to counsel:

the *Miranda* warnings also served to make petitioner aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning. Petitioner knew that any statement that he made could be used against him in subsequent criminal proceedings. This is the ultimate adverse consequence petitioner could have suffered by virtue of his choice to

make uncounseled admissions to the authorities. This warning also sufficed-contrary to petitioner's claim here, see Tr. of Oral Arg. 7–8, to let petitioner know what a lawyer could "do for him" during the postindictment questioning: namely, advise petitioner to refrain from making any such statements. By knowing what could be done with any statements he might make, and therefore, what benefit could be obtained by having the aid of counsel while making such statements, petitioner was essentially informed of the possible consequences of going without counsel during questioning. If petitioner nonetheless lacked "a full and complete appreciation of all of the consequences flowing" from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum.

*Id.* at 293–94, 108 S.Ct. 2389 (footnote omitted). The critical question, according to the Court, is this: "Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel?" *Id.* at 292–93, 108 S.Ct. 2389. The answer to that question in Johnson's case is that he was made sufficiently aware of his right to have counsel present during the questioning by Detective Arnold, and of the possible consequences of a decision to forgo the aid of counsel.

Does it matter that he was not told that he had already been charged with the crimes? Although the Supreme Court has not explicitly answered the question, several federal circuit courts and at least one state appellate court have, either directly or indirectly, and all have answered it the same way: the failure to inform the defendant that he has been charged with the

crime with respect to which he is making a statement does not vitiate an otherwise valid *Miranda* warning given at the interview where the statement was made. *See United States v. Charria,* 919 F.2d 842 (2nd Cir.1990), *cert. denied; Riddick v. Edmiston,* 894 F.2d 586 (3rd Cir.1990); *Norman v. Ducharme,* 871 F.2d 1483 (9th Cir.1989), *cert. denied; Quadrini v. Clusen,* 864 F.2d 577 (7th Cir.1989); *United States v. Carrasco,* 887 F.2d 794 (7th Cir. 1989); *State v. Anson,* 258 Wis.2d 433, 654 N.W.2d 48 (2002).

We now apply the foregoing principles to the facts of this case, which are as follows. On February 10, 2004, Johnson was arrested by U.S. marshals in Hammond, Indiana. The arrest was made pursuant to the January 16, 2003, two-count murder warrant. It is not clear whether the arresting officer or officers read the warrant to Johnson at the time of arrest, because the arresting officers did not testify at trial. The marshal called Detective Arnold and told him Johnson was in custody. Arnold drove to Hammond, picked up Johnson, and transported him to the GPD. Detective Arnold did not recall whether he advised Johnson that he (Johnson) had been charged with the murders. He testified:

> As I said, I really don't recall the exact wording. It was no secret. I didn't care if he knew or not. I wouldn't have kept it from him. But I don't recall if I specifically told him you are charged with two counts of murder from January 15th, 2003. I am not sure. I wasn't keeping it a secret from him.

*Transcript* at 481. Upon arriving at the GPD, Detective Arnold advised Johnson of his constitutional rights in the manner described previously in this opinion. It was after these events transpired that Johnson

gave the statement admitting he committed the murders.

After reviewing the foregoing, we are satisfied that Johnson was made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel. *See Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261. He knew he had been arrested pursuant to a warrant and that he was going to be questioned about murders. Even assuming for the sake of argument that neither the arresting United States marshal nor Detective Arnold specifically advised Johnson that he had been charged with the murders, Johnson was or reasonably should have been aware of the gravity of his situation with respect to the crimes about which he was being questioned.

In summary, Johnson does not challenge the adequacy of his advisement of rights, but merely asserts that said advisement and his subsequent waiver were invalid because he was not first informed that he had been charged with the murders of West and Tasha. We conclude that, although preferable, the lack of such an advisement did not, in and of itself, vitiate Johnson's waiver of rights. Rather, the proper inquiry for determining whether the waiver was valid is whether Johnson was "made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel [.]" *Patterson v. Illinois,* 487 U.S. at 292–93, 108 S.Ct. 2389. He was, and the waiver was valid. *Cf. also United States v. Charria,* 919 F.2d 842 (waiver valid where the accused understood he was under arrest and the authorities had read him *Miranda* warnings); *Norman v. Ducharme,* 871 F.2d 1483 (a waiver of rights was knowing after police showed the accused a copy of his arrest warrant, read him the *Miranda*

warnings, and the accused signed a *Miranda* waiver form); *United States v. Carrasco,* 887 F.2d 794 (waiver valid because *Miranda* warnings were given); *State v. Anson,* 258 Wis.2d 433, 654 N.W.2d 48, 54 ("[e]ven if they did not know they had been formally charged with a crime, these defendants had sufficient information so that they could comprehend the gravity of their situation and the nature of their Sixth Amendment right to counsel").

Judgment affirmed.

MATHIAS and BARNES, JJ., concur.