IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110539-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (December 28, 2012) |
| Ryan Daniel Mills, | ) | |
| | ) | 2012 UT App 367 |
| Defendant and Appellant. | ) | |

-----

Eighth District, Duchesne Department, 101800163
The Honorable Edwin T. Peterson

Attorneys:    Brian E. Arnold and Mark E. Arnold, Ogden, for Appellant
              Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee

-----

Before Judges Thorne, Voros, and Roth.

THORNE, Judge:

¶1    Ryan Daniel Mills appeals from his convictions on three counts of unlawful sexual conduct with a sixteen or seventeen year old, *see* Utah Code Ann. § 76-5-401.2 (2008); one count of enticing a minor, *see id.* § 76-4-401; five counts of sexual exploitation of a minor, *see id.* § 76-5a-3 (current version at *id.* § 76-5b-201 (2012)); and one count of rape, *see id.* § 76-5-402 (2008).  We affirm.

BACKGROUND[1]

¶2     In January 2009, Mills was in Utah on leave from his active duty Army posting in Louisiana when he ran into sixteen-year-old C.D. at a grocery store in Duchesne. Mills, who was twenty-eight years old at the time, knew C.D. as the daughter of his brother's ex-wife. Mills flirted with C.D., and the two began texting each other regularly. Over the next few weeks, Mills pursued a relationship with C.D., and Mills and C.D. had sex several times before Mills returned to Louisiana in February.

¶3     Mills and C.D. continued to communicate by text and by phone. C.D. sent Mills pictures of herself from her cell phone, and Mills asked C.D. to send him nude pictures. At first, C.D. refused, but Mills persisted, telling C.D. that it would be "a good way to keep our relationship good." C.D. eventually gave in to Mills's requests, and she sent him five different pictures of herself nude from the waist up over the course of the next several weeks.

¶4     Mills drove back to Utah on leave in June 2009. He immediately went to visit C.D., and the two once again had sex. However, the subject of sex had become a point of contention in the relationship, and afterwards, the two argued about Mills's motives. A few days before the Fourth of July, Mills went to C.D.'s home, and C.D. agreed to let him spend the night as long as he promised that they would not have sex. Mills promised that they would not, but when the two went to bed, Mills began making physical advances. C.D. repeatedly told Mills to stop and tried to push him away, but Mills held her down and forced himself on her. When C.D. confronted Mills in the morning, he first denied having had sex with her, and then told her that he must have been sleeping. C.D. and Mills did not have sex again, and before Mills left for Louisiana, C.D. borrowed his computer and deleted a folder containing pictures of her, including at least two of the topless pictures she had sent him.

¶5     C.D. did not report the rape to authorities until April 2010, after Mills persisted in texting her despite her demands that he stop. Detective Wade Butterfield of the Duchesne County Sheriff's Office was assigned to the case, and he interviewed C.D. on April 8. Butterfield then began attempting to contact Mills, who by this time was

---

[1]We recite the facts in the light most favorable to the jury's verdict. *See State v. Jeffs*, 2010 UT 49, ¶ 3, 243 P.3d 1250.

stationed in South Carolina. Butterfield finally spoke to Mills by phone on April 29, at which time Mills admitted to having had consensual sex with C.D. Also on April 29, the State charged Mills by information with fifteen crimes arising from his interactions with C.D. The State seized Mills's computer pursuant to a warrant and sent it to a forensic facility for examination. No pictures of C.D. were ever recovered from the computer.

¶6 Mills's preliminary hearing was set for July 8, 2010, but was continued several times at Mills's request. The hearing was finally held on October 4, 2010, at which time the State dismissed five of the ten counts of sexual exploitation of a minor that were charged in the information.[2] Mills was bound over on the remaining ten charges—three counts of unlawful sexual contact with a sixteen or seventeen year old, one count of enticing a minor, five counts of sexual exploitation of a minor, and one count of rape. Trial was set for January 19, 2011. Prior to trial, Mills sought to suppress his phone interview with Butterfield because Butterfield had failed to give him *Miranda* warnings prior to the interview. The district court denied Mills's motion to suppress.[3]

¶7 On December 9, 2010, forty-one days prior to trial, the State filed a notice that identified two proposed expert witnesses who had participated in the forensic analysis of Mills's computer. However, on January 13, 2011, the State notified defense counsel that no evidence had been found on Mills's computer and that the State no longer intended to call its expert witnesses. Mills responded by seeking a continuance of trial because, among other reasons, the State had not provided him with copies of the experts' reports. On the morning of the scheduled January 19 trial, the State confirmed that it would not be calling the expert witnesses. The district court granted Mills's motion for a continuance and rescheduled the trial for February 15. The district court

---

[2]"Sexual exploitation of a minor" is Utah's name for the crime committed by, inter alia, possessing or producing child pornography. *See* Utah Code Ann. § 76-5a-3 (2008) (current version at *id.* § 76-5b-201 (2012)).

[3]The district court's denial of Mills's suppression motion apparently occurred at a motion hearing. The transcript of that hearing is not a part of the record on appeal, and there is no minute entry for the hearing. Nevertheless, it is undisputed that the district court denied Mills's motion.

indicated that there would be no further continuances. Later in the day on January 19, the State provided Mills with copies of the experts' reports.

¶8 On the first morning of trial, Mills again raised the expert witness issue, arguing that he had not been provided with the expert witnesses' reports thirty days prior to trial as required by Utah law. The district court expressed to the parties that the State's failure to timely disclose the expert reports would likely preclude the State from calling those witnesses but did not present a problem in light of the State's decision to not call them. Nevertheless, the district court invited Mills to "make a motion on Rule 16," referring to the criminal rule governing discovery. *See* Utah R. Crim. P. 16. Mills's counsel responded, "I think we can move forward," and then confirmed the district court's observation that he was waiving the issue. Shortly thereafter, when the district court refused to allow Mills to call the two experts as defense witnesses due to Mills's own failure to provide notice, Mills's counsel attempted to retract his waiver. The district court denied the motion to retract the waiver, and no motion for continuance was ever made.

¶9 Trial proceeded, with C.D. and Butterfield providing the only testimony in the State's case in chief. C.D. described the various sex acts that had occurred, including the alleged rape. The State did not produce the nude pictures of C.D. that gave rise to the sexual exploitation counts, but C.D. described each of the five images in detail and testified that each depicted her bare breasts. C.D. testified that she took the pictures and sent them to Mills over the course of several months at his repeated requests. She also testified that she later deleted the pictures from Mills's computer in Utah, stating that "there was a folder with my name on it and it had pictures of me clothed and pictures of me nude. I just deleted the whole folder." However, when asked specifically if she had seen any of the five nude pictures on Mills's computer, she answered only that she had seen "two of them in the little thumbnails on the folder." The jury also heard the audio recording of Butterfield's phone interview with Mills, as well as defense testimony from another detective, from Mills's brother, and from Mills himself.

¶10 Near the end of trial, Mills made a motion to dismiss the five sexual exploitation of a minor counts. Mills argued that the State had not actually produced the nude pictures of C.D. at trial and that there was no evidence that Mills had ever possessed those pictures within the state of Utah. The district court responded,

> I'm going to deny the motion. I believe there's enough evidence to go to—to the jury. The young lady said that she viewed pictures that she erased on the computer in Duchesne County. So you're making it on a jurisdictional issue based upon the fact that he was in another state. Also, I believe jurisdictionally, if they were created in Utah and sent, Utah has—has joint jurisdiction with where they were sent to. So I will deny your motion at this point in time.

The jury convicted Mills on all charges, and he now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶11     Mills first argues that the district court should have suppressed his phone interview with Butterfield. Mills argues that the interview constituted a custodial interrogation that entitled him to *Miranda* warnings and that he did not waive his Sixth Amendment right to have the assistance of counsel during the interview. "We review determinations of custodial interrogation for correctness, giving no deference to the trial court's decision." *State v. Butt*, 2012 UT 34, ¶ 7, 284 P.3d 605. However, we will generally not consider issues that were not adequately preserved for appeal in the district court. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

¶12     Second, Mills argues that the State's failure to provide full and timely notice of its proposed expert witnesses deprived Mills of his due process rights to confront the witnesses against him and to present exculpatory evidence. Issues that implicate the district court's refusal to grant a continuance are reviewed only for abuse of discretion. *See State v. Torres-Garcia*, 2006 UT App 45, ¶ 10, 131 P.3d 292 ("The decision to grant or deny a requested continuance lies within the broad discretion of the trial court, and we will not disturb such a decision absent a clear abuse of discretion." (internal quotation marks omitted)).

¶13     Third, Mills argues that the district court lacked criminal jurisdiction over at least three of his five sexual exploitation of a minor convictions because the evidence shows that Mills possessed only two of the five nude images of C.D. within the state of Utah.

Whether the district court had criminal jurisdiction is a question of law, which we review for correctness. *See State v. Holm*, 2006 UT 31, ¶ 10, 137 P.3d 726.

¶14 Finally, Mills argues that there was insufficient evidence to support any of the sexual exploitation of a minor convictions because the State could not actually produce the nude pictures of C.D. and instead relied only on her descriptions of those images. When a defendant challenges the sufficiency of the evidence to support a jury verdict, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 (internal quotation marks omitted).

ANALYSIS

I. Suppression Issues

¶15 Mills argues that the district court should have suppressed all evidence arising from his April 29, 2010 phone conversation with Detective Butterfield. Mills first argues that the conversation was a custodial interrogation for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), and that it must therefore be suppressed because Butterfield failed to give him the *Miranda* warnings prior to questioning him. *See generally Salt Lake City v. Carner*, 664 P.2d 1168, 1170 n.2 (Utah 1983) ("*Miranda v. Arizona* held that an accused person in custody must be advised, prior to the time a statement is taken, that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be provided for him if he cannot afford to have one." (citation omitted)). Mills also argues that he had a Sixth Amendment right to the assistance of counsel during the conversation and that he did not knowingly waive that right.

A. Failure to Give *Miranda* Warnings

¶16 Persons "subjected to custodial interrogation" are entitled to the *Miranda* warnings in order to preserve their Fifth Amendment right against self-incrimination. *See State v. Butt*, 2012 UT 34, ¶ 12, 284 P.3d 605. "Where an individual is subject to custodial interrogation and not given *Miranda* warnings, any statement made by that individual is inadmissible at trial" in the State's case in chief. *State v. Maestas*, 2012 UT

App 53, ¶ 48, 272 P.3d 769; *see also Harris v. New York*, 401 U.S. 222, 224–26 (1971) (holding that statements obtained in violation of *Miranda* may still be used for impeachment purposes).  Mills argues that his interview with Butterfield constituted custodial interrogation even though it took place over the phone between two different states.  We disagree.

¶17    "Custodial interrogation" requires both custody and interrogation, *see Butt*, 2012 UT 34, ¶ 12, and "[a] person is in custody when '[his or her] freedom of action is curtailed to a degree associated with formal arrest,'" *State v. Levin*, 2006 UT 50, ¶ 35, 144 P.3d 1096 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).  On the question of custody, we initially observe that the voluntary telephone interview conducted in this case strikes us as a far cry from the in-person station house interrogation that gave rise to the *Miranda* warning requirements.  *See generally Howes v. Fields*, 132 S. Ct. 1181, 1190 (2012) ("In the paradigmatic *Miranda* situation—a person is arrested in his home or on the street and whisked to a police station for questioning—detention represents a sharp and ominous change, and the shock may give rise to coercive pressures.  A person who is 'cut off from his normal life and companions' and abruptly transported from the street into a 'police-dominated atmosphere' may feel coerced into answering questions.").  Further, Mills has provided no authority for the proposition that a telephone interview can necessitate *Miranda* warnings, while the State has provided some authority to the contrary.  *See Pasdon v. City of Peabody*, 417 F.3d 225, 227–28 (1st Cir. 2005) (determining that questioning over the telephone did not constitute custody); *Commonwealth v. Smallwood*, 401 N.E.2d 802, 806 (Mass. 1980) ("As for the telephone statements, clearly the defendant was not in custody.").

¶18    Despite our skepticism that *Miranda* custody can be effectuated over the phone, we will evaluate Mills's argument under the standards established by Utah case law.

> The Utah Supreme Court has identified four factors that aid in determining whether a person is in custody for *Miranda* purposes:  "(1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation."

*Maestas*, 2012 UT App 53, ¶ 50 (quoting *Carner*, 664 P.2d at 1171).  In evaluating the custody question, "[n]o one factor is dispositive, and we look to the totality of the circumstances in making our determination."  *Id.*

¶19     Mills argues that the first factor, the site of the interrogation, favors a finding of custody because Butterfield had attempted to call him so often that Mills "felt that he had to answer the phone call in order to stop the phone calls from interrupting his day to day duties."  Mills further states that the "site of interrogation was compounded by [Mills] being on a military base," "where different rules and standards apply."  We are unpersuaded by these arguments.

¶20     Despite the regimented nature of military life, Mills's location at the time of the interview is easily distinguishable from the station house involved in *Miranda*.  Our own supreme court has further stated that even "a person who is incarcerated is not always 'in custody' within the meaning of *Miranda*" and that *Miranda* custody "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion."  *Butt*, 2012 UT 34, ¶¶ 16–17.  The military base provided Mills with familiar surroundings, and there is no suggestion that Butterfield contacted either the military police or Mills's chain of command as a way of pressuring Mills to speak with him.  *Cf. id.* ¶ 22 (finding no *Miranda* custody where "Defendant's liberty was not restrained beyond his usual status as a jail inmate, nor was he coerced in any way").  And neither Butterfield nor anybody else in a position to coerce or intimidate Mills was physically present with Mills during the interview.

¶21     The second factor is whether the investigation was focused on the accused at the time of the questioning, if that fact was communicated to the accused.  *See State v. Maestas*, 2012 UT App 53, ¶ 50, 272 P.3d 769; *see also Stansbury v. California*, 511 U.S. 318, 324 (1994) (per curiam) ("[A] police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question [of] whether the individual is in custody for purposes of *Miranda*.").  This factor weighs in favor of a determination of custody, as Butterfield effectively conveyed to Mills that he was the sole focus the investigation at the time of the interview.  *Compare State v. Mirquet*, 914 P.2d 1144, 1148 (Utah 1996) (finding a focus on the accused where "Officer Mangelson explicitly stated his conclusion of illegal conduct and, in effect, directed Mirquet to retrieve incriminating evidence from his car"), *with State v. Allred*, 2002 UT App 291, ¶ 13, 55 P.3d 1158 ("Defendant was not the sole focus of the investigation; the officers

asked the same questions to all six individuals in an attempt to identify the bag's owner.").

¶22    The third factor involves the presence or absence of "objective indicia of arrest." *See Maestas*, 2012 UT App 53, ¶ 50.  Objective indicia of arrest include such things as "readied handcuffs, locked doors[,] or drawn guns." *See Salt Lake City v. Carner*, 664 P.2d 1168, 1171 (Utah 1983).  None of those indicia were present during the telephone interview in this case.  Mills argues that Butterfield was going to arrest him no matter what the results of the interview were, but Butterfield's subjective perspective is not relevant to the custody determination. *See Maestas*, 2012 UT App 53, ¶ 54 n.11 ("[C]ustody is viewed, almost without exception, from an objective standpoint.").[4] There were absolutely no objective indicia of arrest present during the phone interview, and nothing prevented Mills from terminating the interview by simply hanging up the phone.  We therefore determine that the third custody factor weighs against a finding of custody.

¶23    The fourth and final factor for determining custody is the length and form of the questioning.  Mills concedes that the phone interview was quite short in duration, lasting approximately ten minutes. *See id.* ¶ 55 (stating that fifteen minutes was "a brief period of time as police interrogation goes").  He focuses instead on the nature of Butterfield's questions, which he characterizes as accusatory. *See generally Mirquet*, 914 P.2d at 1148 ("[T]he accusatory nature of questioning is a relevant factor in determining whether a person is in custody.").  Even if we were to agree with Mills that Butterfield's questions were accusatory, accusatory questioning will not create custody "if there is no arrest or restriction on . . . freedom of movement and the interrogated person is free to terminate the interview and leave." *See id.*  The duration and nature of Butterfield's questioning of Mills was not of a kind that might break down Mills's will and result in an involuntary statement, and we determine that the fourth factor also weighs against a finding of custody.

---

[4]Mills also argues that Butterfield's statement that C.D. had accused him of rape constituted an objective indication that Mills was under arrest.  We address the form of Butterfield's questioning under the fourth custody factor. *See State v. Maestas*, 2012 UT App 53, ¶ 50, 272 P.3d 769.

¶24 Of the four factors, only one—the fact that Butterfield was focusing on Mills as a suspect—favors a finding of custody. In light of the other factors, we conclude that Mills's "freedom of action [was not] curtailed to a degree associated with formal arrest." *State v. Levin*, 2006 UT 50, ¶ 35, 144 P.3d 1096. The overall length, form, and circumstances of the voluntary, transcontinental telephone interview simply do not rise to the level of being so long, so draining, or so fierce as to be problematic under *Miranda*. Mills was not in custody and *Miranda* warnings were not required.

B. Sixth Amendment Right to Counsel

¶25 Mills also argues that he had a Sixth Amendment right to the assistance of counsel during the phone interview even if he was not in custody for *Miranda* purposes. Mills argues that his Sixth Amendment right to counsel attached when the State initiated adversarial proceedings against him prior to the interview.[5] *See generally State v. Wood*, 868 P.2d 70, 86 (Utah 1993) ("The Sixth Amendment right to counsel attaches at the initiation of adversary judicial criminal proceedings, 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972))), *overruled on other grounds by Mirquet*, 914 P.2d 1144. Mills also argues that although he voluntarily spoke with Butterfield without requesting an attorney, he did not waive his Sixth Amendment rights.[6]

---

[5]The record indicates that the State charged Mills by information on April 29, the same day as his interview with Butterfield. The State argues that it is unclear from the record whether the phone call took place before or after the information was filed. Mills responds by asserting that the district court made a finding at the suppression hearing that the information was filed several hours prior to the phone call, although the transcript of that hearing is not in the record. For purposes of this analysis, we will simply assume that the interview occurred after Mills had been formally charged.

[6]During the phone interview, Butterfield did not inform Mills that the State had filed charges against him, and Mills did not invoke a right to counsel. Instead, Mills elected to speak with Butterfield without the assistance of counsel. If Mills's decision to proceed without counsel was "knowing and intelligent," then his actions likely effected a waiver of any Sixth Amendment right to counsel that may have arisen from the filing of charges. *See generally Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (holding that a

(continued...)

¶26    We do not consider Mills's Sixth Amendment argument because he did not preserve it before the district court. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."). Mills filed a pretrial motion to suppress as required by rule 12 of the Utah Rules of Criminal Procedure, *see* Utah R. Crim. P. 12(c)(1)(B) ("The following shall be raised at least five days prior to the trial: . . . motions to suppress evidence . . . ."), but that motion asserted only a *Miranda* violation and did not make the Sixth Amendment argument that Mills is now making on appeal. Nor did Mills attempt to raise the issue at trial. Accordingly, Mills deprived the district court of the "opportunity to address [the] claimed error and, if appropriate, correct it," *see Holgate*, 2000 UT 74, ¶ 11 (internal quotation marks omitted), and we decline to address the argument as it is unpreserved.[7] *See id.*

---

[6](...continued)
defendant who had been given *Miranda* warnings but spoke to police anyway waived his Sixth Amendment right to counsel). However, at least one court has determined that a defendant's failure to invoke his Sixth Amendment right does not constitute a waiver of that right when the defendant is unaware that criminal proceedings have been initiated. *See State v. Anson*, 2002 WI App 270, ¶ 19, 654 N.W.2d 48 ("At the onset of post-charge pretrial police interrogations, the accused must be made aware that the adversarial process has begun and that he or she can request the assistance of counsel at the onset of post-charge pretrial police interrogations. This can be accomplished by informing the accused that he or she has been formally charged with a crime, by reading to the accused the *Miranda* warnings, or by anything else that would inform the accused that the adversarial process has begun.").

[7]We note that Mills does not argue plain error or exceptional circumstances, and we therefore do not consider those exceptions to the preservation rule. *See State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 ("When a party raises an issue on appeal without having properly preserved the issue below, we require that the party articulate an appropriate justification for appellate review; specifically, the party must argue either plain error or exceptional circumstance[s]." (citation and internal quotation marks omitted)).

## II. Expert Witnesses

¶27    Mills argues that the State deprived him of his due process rights and his right to produce exculpatory evidence when it failed to provide him with two expert witness reports thirty days before trial.  According to Mills, this failure entitled him to yet another continuance of his trial.  Mills relies on Utah Code section 77-17-13(1)(a), which states, "If the prosecution or the defense intends to call any expert to testify in a felony case at trial . . . , the party intending to call the expert shall give notice to the opposing party as soon as practicable but not less than 30 days before trial . . . ."  Utah Code Ann. § 77-17-13(1)(a) (2008).  The required notice includes "a copy of the expert's report, if one exists."  *Id.* § 77-17-13(1)(b)(i).  The record reflects that the State provided the expert reports only twenty-seven days before trial, but we are not convinced that this required any further continuance.

¶28    We initially note that Mills waived this issue by failing to raise it at the January 19, 2010 continuance hearing.  *Cf. State v. Perez*, 2002 UT App 211, ¶ 37, 52 P.3d 451 ("When the prosecution introduces unexpected testimony, a defendant essentially waive[s] his right to later claim error if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g)." (alteration in original) (internal quotation marks omitted)).  Mills was aware at the January 19 continuance hearing that the experts' reports had not yet been produced, but there is no indication in the record that he objected to the district court's proposed February 15 trial date even though that date was less than thirty days away.  To the extent that this did not fully waive the issue, Mills's counsel expressly indicated on the first day of trial that the case could move forward despite having had the experts' reports for only twenty-seven days.  The district court then stated, "Okay, so there's no motion, so you've waived your Rule 16 evidentiary issues here," to which Mills's counsel responded, "Right."  In light of this exchange, Mills clearly waived any issue arising from the State's disclosure of the experts' reports.[8]

---

[8]Mills's appellate brief makes a cursory reference to the district court's refusal to allow his counsel to withdraw his express waiver but raises no argument or authority that the district court's decision was in error.  Mills also suggests that his waiver should be limited to issues governed by rule 16 of the Utah Rules of Criminal Procedure, but it is clear from the context that his waiver included the issue of the late-disclosed experts'

(continued...)

¶29    Even if we were to reach the merits of Mills's argument, Mills relies solely on an alleged violation of Utah Code section 77-17-13's requirement that the State disclose expert witness reports thirty days prior to trial if it "intends to call any expert to testify in a felony case at trial." *See* Utah Code Ann. § 77-17-13(1)(a), (b)(i). We see no violation of this requirement where the State gave Mills notice more that thirty days prior to the ultimate trial date that it no longer intended to call the expert witnesses. Further, even if the statute did impose a duty on the part of the State to disclose the reports, the statutory remedy is "a continuance of the trial or hearing sufficient to allow preparation to meet the testimony," "if necessary to prevent substantial prejudice." *Id.* § 77-17-13(4)(a). As the State never did call the expert witnesses at trial, there was no need for a continuance "to allow preparation to meet the testimony" because there was ultimately no testimony for which to prepare. *See id.* Mills has also presented no argument as to how he suffered substantial prejudice by receiving the reports twenty-seven days before trial rather than thirty, particularly when the substance of the reports was that no evidence had been found on his computer.

¶30    In sum, Mills waived this issue when he failed to object to the February 15 trial date and when his counsel expressly indicated on the first day of trial that the trial could proceed despite any late disclosure of the experts' reports. Further, in light of the State's disclosure of the reports twenty-seven days before trial despite its lack of intent to call the expert witnesses, the absence of inculpatory evidence in the reports, and the fact that the expert witnesses did not testify at Mills's trial, we see no violation of Utah Code section 77-17-13 in this matter. Accordingly, we will not disturb Mills's convictions on that basis.

### III. Jurisdiction

¶31    Mills argues that the State lacked criminal jurisdiction to convict him of three of the five counts of sexual exploitation of a minor. According to Mills, the State's theory that he violated Utah law by possessing pornographic images of C.D. required evidence that he possessed each of the five images within the state of Utah. On appeal, Mills asserts that C.D. testified that she only ever saw two of the five nude pictures on Mills's

---

[8](...continued)
reports even though that issue arises under Utah Code section 77-17-13 rather than rule 16.

computer when he returned to Utah in the summer of 2009.  Mills argues that, in light of this testimony, "Utah would only have jurisdiction over two of [the] counts of possessing child pornography and [Mills] could not be convicted of five (5) counts when the testimony is that only two nude photos ever existed or were possessed in the state of Utah."  We disagree with Mills's characterization of C.D.'s testimony, and we affirm the district court's denial of Mills's motion to dismiss for lack of jurisdiction.

¶32    Criminal jurisdiction is governed by Utah Code section 76-1-201.  *See* Utah Code Ann. § 76-1-201 (2008).  Among other circumstances enumerated in that statute, Utah has criminal jurisdiction over an offense when "the offense is committed either wholly or partly within the state."  *Id.* § 76-1-201(1)(a).  "An offense is committed partly within this state if either the conduct which is any element of the offense, or the result which is an element, occurs within this state."  *Id.* § 76-1-201(2).  "The jurisdiction determination is a matter for the trial court, not the jury, and the court itself must resolve any associated factual disputes by a preponderance of the evidence."  *State v. Holm*, 2006 UT 31, ¶ 93, 137 P.3d 726.

¶33    Utah Code section 76-1-201 provides that "[a] defendant may challenge jurisdiction by filing a motion before trial stating which facts exist that deprive the state of jurisdiction."  Utah Code Ann. § 76-1-201(5)(b).  The Utah Supreme Court has suggested that this language "require[s] the defendant to file a pretrial motion in order to challenge jurisdiction."  *Holm*, 2006 UT 31, ¶ 93 n.15.  Here, Mills failed to raise the jurisdictional issue by pretrial motion, and the statute provides that jurisdiction is therefore established by the pleadings.[9]  *See* Utah Code Ann. § 76-1-201(5)(a) ("If no jurisdictional issue is raised, the pleadings are sufficient to establish jurisdiction.").

¶34    Despite Mills's failure to file a pretrial motion, he did file a motion to dismiss near the close of the State's case that at least implicated jurisdiction, and the district

_____

[9]In the information against Mills, each sexual exploitation of a minor count alleged that he "knowingly produced, distributed, possessed, or possessed with intent to distribute child pornography," and did so in "Duchesne County, State of Utah."  Clearly, this language alleges violations of Utah law occurring within the state of Utah.  We note that the State eventually limited its prosecution of these counts to a possession theory and that the jury was instructed to convict Mills only if it found that he had possessed child pornography in Utah.

court considered and ruled on that motion. We recognize that there may be situations where a jurisdictional deficiency might only become apparent once testimony and evidence is presented at trial. Further, the statutory language notwithstanding, "[c]riminal jurisdiction is a form of subject matter jurisdiction" and "an appellate court may dismiss a criminal charge for lack of criminal jurisdiction at any time, regardless of whether the defendant raised the issue before or during trial." *Holm*, 2006 UT 31, ¶ 96. In light of these considerations, we proceed to evaluate the district court's denial of Mills's motion.[10]

¶35    On the morning of the second day of trial, Mills's counsel made a motion to dismiss the sexual exploitation of a minor counts, arguing, "[T]hey have presented no evidence that he actually possessed [the images] here in the state of Utah. And [C.D.'s] testimony was she sent them all to him while he was in Louisiana." The district court denied the motion, stating, "I believe there's enough evidence to go to—to the jury. [C.D.] said that she viewed the pictures that she erased on the computer in Duchesne County." Mills argues on appeal that C.D. actually testified that she only saw two nude images of herself on his computer.

¶36    We disagree with Mills's assertion that C.D. clearly testified that she "only" saw two pornographic images on Mills's computer. The portion of C.D.'s testimony relied upon by both the district court and Mills is as follows:

> Q. Okay. Did you ever see the pictures again that you had
> sent to him?
>
> A. After I'd sent them to him?
>
> Q. Yeah.

---

[10]Although we consider Mills's argument, we note that a pretrial motion would have been very helpful in focusing the district court and the parties on the jurisdictional issues in this case. We also note that these issues were eminently foreseeable in light of the interstate circumstances surrounding C.D.'s allegations and the charges against Mills.

A. *I deleted them off of his computer when he was here on leave,* the time that he forced me to have sex with him.

. . . .

Q. Okay. And how did you find the pictures on there?

A. I just went snooping through his pictures folder and then there was a folder with my name on it and it had pictures of me clothed and pictures of me nude. I just deleted the whole folder.

Q. Okay. Did you see any of the pictures that you've described earlier today?

A. *I saw two of them* in the little thumbnails on the folder.

(Emphasis added.) Contrary to Mills's interpretation, C.D.'s testimony strikes us as somewhat ambiguous and contradictory on the question of how many nude images were actually on Mills's computer. C.D.'s testimony that she deleted "them"—the images she had sent Mills—implies that those images were on the computer; however, her testimony that she "saw two of them" could also give rise to an inference that the computer held only two of the pornographic pictures or that she remembered seeing at least two.[11]

¶37 We see no reason to disturb Mills's convictions merely because there was somewhat conflicting testimony about the number of partially nude pictures that C.D. deleted from his computer. Despite C.D.'s arguably conflicting statements, the district court found that C.D. had testified that "she viewed the pictures that she erased on the

---

[11]We note that C.D.'s testimony that she deleted all five pictures is not necessarily fatally inconsistent with her testimony that she saw two of the pictures on Mills's computer. One explanation for her testimony might be that C.D. only saw two of the nude images on Mills's computer but recognized the others from their file names or dates without viewing the images themselves. We also note that the relevant factual issue is whether the images were on Mills's computer, not whether C.D. viewed them.

computer in Duchesne County." To challenge this factual finding on appeal, Mills is required to marshal the evidence in support of the district court's ruling. *See State v. Greenwood*, 2012 UT 48, ¶ 27 ("Under the Utah Rules of Appellate Procedure, '[a] party challenging a fact finding must first marshal all record evidence that supports the challenged finding.'" (alteration in original) (quoting Utah R. App. P. 24(a)(9))). Mills's failure to account for C.D.'s testimony that she had deleted the pictures in the state of Utah represents a failure of his marshaling duty, and we could affirm the district court's ruling on that ground alone.

¶38 Even if we were to ignore Mills's marshaling failings, he would have to meet the high burden of demonstrating that the district court's ruling was clearly erroneous. *See State v. Hutchings*, 2012 UT 50, ¶ 8, 285 P.3d 1183 ("We apply the clearly erroneous standard to factual findings of the trial court."). Although multiple interpretations of C.D.'s testimony are possible, we cannot say that the district court's interpretation is clearly in error. This is particularly so in light of the jury's subsequent findings that Mills had possessed all five images in Utah, findings that were made under the higher, "beyond a reasonable doubt" standard.[12] *See State v. Winfield*, 2006 UT 4, ¶ 26, 128 P.3d 1171 ("Because a bindover determination requires less evidence than a conviction, there is an inference that any flaw in a bindover determination is necessarily cured if the defendant is later convicted beyond a reasonable doubt." (internal quotation marks omitted)).

¶39 The district court found that C.D. had testified that she had deleted the nude images that she had sent to Mills—five of which she had identified and described at trial—from his computer in the state of Utah. This finding is sufficient to support the State's criminal jurisdiction on all five sexual exploitation of a minor counts, *see* Utah Code Ann. § 76-1-201(1)(a) (2008) (stating that Utah has criminal jurisdiction when "the offense is committed either wholly or partly within the state"), and Mills has failed to adequately challenge the finding on appeal. Accordingly, we affirm Mills's sexual exploitation convictions against his challenge to the State's criminal jurisdiction.

---

[12]We note that Mills does not challenge the sufficiency of the evidence supporting the jury's findings that he possessed each image in Utah.

IV. Sufficiency of the Evidence

¶40     Finally, Mills argues that there was insufficient evidence to convict him of sexual exploitation of a minor because the State did not actually produce the pornographic pictures of C.D. that he was alleged to have possessed.  Mills argues that the only evidence of the content of the pictures was C.D.'s testimony and that testimony alone is insufficient to prove that the pictures constituted child pornography.  We will affirm a jury's verdict against a sufficiency of the evidence challenge "if upon reviewing the evidence and all inferences that can be reasonably drawn from it, [we conclude] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Hamilton*, 2003 UT 22, ¶ 41, 70 P.3d 111 (internal quotation marks omitted); *see also State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 ("[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." (internal quotation marks omitted)).

¶41     For purposes of Utah's sexual exploitation statute, child pornography includes any visual depiction, including a photograph, where "the production of the visual depiction involves the use of a minor engaging in sexually explicit conduct" or "the visual depiction is of a minor engaging in sexually explicit conduct." *See* Utah Code Ann. § 76-5a-2(1) (2008).  "Sexually explicit conduct" includes "the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person." *See id.* § 76-5a-2(8)(f).  And nudity or partial nudity is defined as "any state of dress or undress in which the human genitals, pubic region, buttocks, or the female breast, at a point below the top of the areola, is less than completely and opaquely covered." *See id.* § 76-5a-2(6).  The pictures of C.D., a minor, therefore constituted child pornography if the images or their production (1) depicted C.D.'s uncovered breasts and (2) did so for the purpose of causing sexual arousal to any person.

¶42     C.D.'s testimony is clearly sufficient to establish both of these elements, particularly since C.D. was personally familiar with both the contents of the pictures and the circumstances surrounding their production and transfer to Mills.  As to the presence of C.D.'s bare breasts in each of the five pictures, C.D. described each picture in detail as to where she was, what she was wearing, and how she was posed.  C.D. confirmed that she took each picture of herself topless and that, in each picture, both of her breasts were completely exposed.  A reasonable jury could certainly have accepted

this direct testimony as proof beyond a reasonable doubt that the pictures each depicted C.D.'s bare breasts.

¶43     C.D.'s testimony also supports a reasonable inference that her nudity in the pictures was "for the purpose of causing sexual arousal of any person." *See id.* § 76-5a-2(8)(f); *see also State v. Garcia-Vargas*, 2012 UT App 270, ¶ 17 n.5, 287 P.3d 474 ("[A]n inference is a deduction as to the existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts." (alteration in original) (internal quotation marks omitted)).  At the time C.D. took the pictures, she and Mills were involved in a sexual relationship, and Mills had repeatedly requested that she send him nude pictures to "keep [their] relationship strong while he was in Louisiana." C.D. complied, producing and sending five topless photographs that each displayed her bare breasts.  When Mills returned to Utah from Louisiana in June 2009 and "showed up" at C.D.'s residence, the "first thing that he wanted to do" was have sex, leading C.D. to later comment to him that she "kind of thought that [sex] was all that he really wanted me for."  A reasonable jury considering this testimony in light of what "human experience teaches us" could reasonably infer that the entire purpose of the photographs was to produce a sexual response in Mills.  *Cf. State v. Morrison*, 2001 UT 73, ¶ 20, 31 P.3d 547 ("We believe the determination of whether material depicting a nude minor is designed 'for the purpose of sexual arousal of any person,' is substantially similar to the determination of whether a visual depiction is intended or designed to elicit a sexual response in the viewer." (citation omitted)).

¶44     In light of C.D.'s testimony, we see no evidentiary problem with the jury's conclusion that the five pictures constituted child pornography.  C.D. described each image in detail and confirmed that each displayed her bare breasts.  But perhaps more importantly, C.D. described the sexualized context in which the pictures were requested, taken, and sent to Mills.  Under these circumstances, we readily conclude that "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Hamilton*, 2003 UT 22, ¶ 41 (internal quotation marks omitted).  We therefore determine that C.D.'s testimony provided sufficient evidence to support Mills's convictions for sexual exploitation of a minor.

CONCLUSION

¶45    The district court did not err in denying Mills's motion to suppress because Mills was not in custody at the time of his phone interview and was therefore not entitled to *Miranda* warnings.  We do not address Mills's argument that the interview violated his Sixth Amendment right to counsel because he did not preserve that issue in the district court.  The district court also acted within its discretion in its rulings related to expert witnesses.  Finally, the State had criminal jurisdiction over all five of Mills's sexual exploitation of a minor convictions, and C.D.'s testimony describing the nude images and their context adequately supports those convictions.  For these reasons, we affirm Mills's convictions.

_____

William A. Thorne Jr., Judge

-----

¶46    WE CONCUR:

_____

J. Frederic Voros Jr., Judge

_____

Stephen L. Roth, Judge