**2020 UT App 72**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KAIN BLACKWING,
Appellant.

Opinion
No. 20170851-CA
Filed May 7, 2020

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 151401859

Andrew G. Deiss, John Robinson Jr., and Corey D.
Riley, Attorneys for Appellant

Sean D. Reyes, and Kris C. Leonard, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

APPLEBY, Judge:

¶1      Kain Blackwing was convicted of, among other things, seven counts of rape. He appeals, contending there was insufficient evidence to sustain his convictions on three of the counts. He also claims the district court erred when it did not grant a new trial after the jury was given allegedly prejudicial evidence in its deliberations. Because we conclude the State did not establish one of the rape offenses occurred in Utah, we reverse and vacate that conviction but affirm Blackwing's remaining convictions.

BACKGROUND[1]

¶2 Seventeen-year-old T.S. began martial arts and survival training in early October 2013 under the tutelage of Blackwing, a man in his forties. Most of the training took place at Blackwing's house. The training began in a small group, but gradually it became one-on-one and increased in frequency. As T.S. began spending more time with Blackwing, he taught her about "Shen living," telling her that he was "a Shen lord" and that "Shen can have multiple women." In fact, Blackwing had two putative wives, who called him "My Lord." After a few months of training, Blackwing told T.S. he knew she had feelings for him, and he reciprocated those feelings. They kissed.

¶3 Approximately one week after the kiss, in March 2014, T.S. moved into the house that Blackwing shared with his two putative wives. T.S. was given an office room as a bedroom, but on her first night living in the house, she stayed in Blackwing's bedroom and they had sexual intercourse for the first time. They had intercourse in March at least three more times.

¶4 One day in April 2014, while T.S. was at school, Blackwing called to tell her that the police raided his house and to warn her that an officer was going to the school to talk to her. Blackwing warned T.S. not to "betray" him and "reminded [her] that there was nothing going on," that they "weren't doing anything wrong," and that she "had to watch what [she] said." The officer came to the school and T.S. agreed to follow him to the Division of Child and Family Services (DCFS) for an

---

1. On appeal from a jury verdict, "we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly," presenting "conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (quotation simplified).

interview. At DCFS, a detective asked T.S. if she and Blackwing "were engaging in any sexual activity," to which she responded, "No." Later that month, Blackwing took T.S. to Texas "to spend more time with [her] as his new wife."

¶5     Several months later, as part of an unrelated case, T.S. revealed her relationship with Blackwing to law enforcement. As a result, Blackwing was charged with, among other things, four counts of rape (counts 1, 2, 3, and 4) alleged to have occurred from March 9, 2014 through March 31, 2014 and three counts of rape (counts 5, 6, and 7) alleged to have occurred from April 1, 2014 through May 13, 2014. The State's theory was that T.S., because of her age and Blackwing's position of special trust or his enticement of her, was incapable of consenting to sexual intercourse.[2]

¶6     The case proceeded to a jury trial, and T.S. testified about the sexual intercourse she and Blackwing had during the month of March. T.S. then said she and Blackwing had intercourse "[m]ore than one time" in April, but after "the DCFS scare," they "didn't have sex . . . as much" and did not have intercourse in May 2014 until she turned eighteen later that month. When asked if she and Blackwing "ha[d] intercourse at any point after the DCFS [scare]," T.S. responded, "In Texas." The State

---

2. "An act of sexual intercourse [or] rape . . . is without consent of the victim under . . . the following circumstances: . . . the victim is younger than 18 years of age and at the time of the offense the actor . . . occupied a position of special trust in relation to the victim . . . ; [or] the victim is 14 years of age or older, but younger than 18 years of age, and the actor is more than three years older than the victim and entices or coerces the victim to submit or participate . . . ." Utah Code Ann. § 76-5-406(10)–(11) (LexisNexis 2013); *see also id.* § 76-5-401.1(1)(c) (defining "position of special trust").

followed up by asking, "But after Texas, there was no intercourse?" T.S. responded, "Not that I can recall, no."

¶7     Among other exhibits, the State introduced audio of telephone conversations between Blackwing and T.S. while Blackwing was incarcerated. Any mention of Blackwing's incarceration was redacted from the audio.

¶8     After the State's case-in-chief, Blackwing's trial counsel moved for a directed verdict, arguing the State did not present sufficient evidence to show lack of consent. The district court denied the motion. Blackwing did not put on a defense, and the case was submitted to the jury. The compact disc containing Blackwing's jailhouse telephone calls was among the exhibits sent with the jury for its deliberations.

¶9     The jury convicted Blackwing on all counts. Shortly after trial, the prosecutor realized that the compact disc that was given to the jury was labeled "Blackwing jail calls." The prosecutor brought this oversight to the attention of Blackwing's trial counsel, who, on October 3, 2017, moved the district court for a new trial, arguing the label on the disc substantially prejudiced Blackwing's right to a fair trial. Before the district court heard the motion, on October 16, 2017, Blackwing appealed his convictions, and this court remanded the case to the district court to rule on the motion for a new trial. After briefing and oral argument, the district court denied the motion, finding Blackwing was not deprived of his right to a fair trial and, because the district court brought the label to the parties' attention prior to trial and the defense did not object at that time, any error was invited. The case is now before us on appeal.

ISSUES AND STANDARDS OF REVIEW

¶10    Blackwing argues there was insufficient evidence that the State had jurisdiction over the charged offenses in counts 5, 6,

and 7. Although Blackwing did not preserve this issue below, "[c]riminal jurisdiction is a form of subject matter jurisdiction," and we "may dismiss a criminal charge for lack of criminal jurisdiction at any time, regardless of whether the defendant raised the issue before or during trial." *State v. Holm*, 2006 UT 31, ¶ 96, 137 P.3d 726.[3] "Whether the district court had criminal jurisdiction is a question of law, which we review for correctness." *State v. Mills*, 2012 UT App 367, ¶ 13, 293 P.3d 1129.

¶11 Blackwing also claims the district court erred when it denied his motion for a new trial. When we have jurisdiction to do so, we review a district court's ruling on a motion for a new trial for abuse of discretion. *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551.

ANALYSIS

I. Jurisdiction Over the Charged Offenses

¶12 Blackwing argues there was insufficient evidence for the jury to convict him of rape on counts 5, 6, and 7. Specifically, he contends the district court did not have jurisdiction over the charged offenses in those counts because the State did not establish that the acts of sexual intercourse occurred in Utah between April 1, 2014 and May 13, 2014. We conclude the State failed to establish one of those offenses occurred in Utah during this timeframe.

¶13 A person may be prosecuted for a crime in Utah if "the offense is committed either wholly or partly within the state."

---

3. Alternatively, Blackwing urges us to reach this issue through the lens of an ineffective-assistance-of-counsel claim. Because we resolve the matter based on jurisdiction, we do not address this argument further.

Utah Code Ann. § 76-1-201(1)(a) (LexisNexis 2017); *see also State v. Mills*, 2012 UT App 367, ¶ 32, 293 P.3d 1129. Although jurisdiction is not technically an element of the crime, the State must establish the existence of jurisdiction by a preponderance of the evidence. Utah Code Ann. § 76-1-501(3); *State v. Ireland*, 2006 UT 17, ¶ 9, 133 P.3d 396; *see also Nevares v. M.L.S.*, 2015 UT 34, ¶ 32 n.4, 345 P.3d 719 ("Jurisdiction is a matter that must be proven by the prosecution under the Utah criminal code." (quotation simplified)). In other words, the State must have established that it "[wa]s more likely than not" that Blackwing and T.S. had sexual intercourse in Utah three times between April 1, 2014 and May 13, 2014. *See V.M. v. Division of Child & Family Services*, 2020 UT App 35, ¶ 21 (quotation simplified).

¶14   T.S. testified that she and Blackwing did not have sex at all in May 2014 until she turned eighteen, so each rape charged in counts 5, 6, and 7 must have occurred in April 2014. The relevant evidence pertaining to these charges was T.S.'s testimony that (1) she and Blackwing had sex "[m]ore than one time" in April, (2) DCFS raided the house and questioned T.S. sometime that month, (3) after the DCFS raid they had intercourse only in Texas, and (4) after they returned to Utah from Texas, she could not recall whether they had intercourse. Although Blackwing contends this evidence is insufficient to establish that *any* of the three rape charges from counts 5, 6, and 7 took place in Utah in the specified timeframe, other evidence supports a reasonable inference that at least two instances of sexual intercourse in April took place in Utah. Specifically, T.S. testified that her Shen instruction continued through the month of April and included "how to please [Blackwing] sexually," that one of the "thing[s] [Blackwing] like[d] the most [wa]s sex," and that the office room she was given as a bedroom was used as a "cover" in case there were visitors to the house. Further, viewing T.S.'s testimony in the order and context it was given, it could be readily inferred that the April incidents of intercourse occurred before the DCFS visit and the trip to Texas.

¶15 Although the State argues this is enough to create a reasonable inference that three acts of sexual intercourse occurred in Utah between April 1 and the time when DCFS raided the house, we disagree. The above evidence reasonably supports the conclusion that two instances of sexual intercourse occurred in Utah in April 2014. The phrase "[m]ore than one time," to which T.S. testified, necessarily supports a reasonable inference that there were at least two instances of sexual intercourse in April, before the trip to Texas. But although "[m]ore than one time" can certainly mean three, four, five, or fifty, such a conclusion, without more specific evidence, impermissibly "rest[s] on mere speculation." *See State v. Pullman*, 2013 UT App 168, ¶ 14, 306 P.3d 827. In short, the State did not establish that it was "more likely than not" that Blackwing and T.S. engaged in sexual intercourse more than two times in Utah between April 1 and May 13, 2014, *see V.M.*, 2020 UT App 35, ¶ 21 (quotation simplified), and we must therefore vacate count 7 on jurisdictional grounds.

## II. Motion for a New Trial

¶16 Blackwing next argues the district court erred when it denied his motion for a new trial. But we do not have jurisdiction over this claim. Blackwing filed the motion for a new trial on October 3, 2017. And on October 16, 2017, while the motion was pending, Blackwing filed a notice of appeal. This court remanded the case for the district court to resolve the pending motion for a new trial, which it resolved in November 2018. But Blackwing did not file a new notice of appeal or an amended notice of appeal as required under the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 4(b)(2) ("A notice of appeal filed after announcement or entry of judgment, but before entry of an order disposing of [a motion for a new trial], shall be treated as filed after entry of the order and on the day thereof, except that such a notice of appeal is effective to appeal only from the underlying judgment."). "To appeal from a final order

disposing of" a motion for a new trial, "a party *must* file a notice of appeal or an amended notice of appeal." *Id.* (emphasis added). Because Blackwing failed to comply with this requirement, we lack jurisdiction over the issue and cannot reach it. *See, e.g., State v. Mackin*, 2012 UT App 199, ¶¶ 7–9, 283 P.3d 997 (concluding this court lacked jurisdiction when the defendant "did not file a new or amended notice of appeal from the district court's denial of his new trial motion").[4]

## CONCLUSION

¶17     We reverse and vacate Blackwing's conviction of rape on count 7 because the State did not establish that the sexual intercourse occurred in Utah, thereby depriving it of jurisdiction. And because we have no jurisdiction over Blackwing's appeal of the district court's denial of his motion for a new trial, we do not reach that issue.

---

4. Citing *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, 199 P.3d 957, Blackwing argues that because the State has not been prejudiced by this jurisdictional failure, we should decide this argument on its merits. But *Kilpatrick* gives us no such authority. *Kilpatrick* instructs us to liberally construe a notice of appeal where it "sufficiently identifies the final judgment at issue *and* the opposing party is not prejudiced." *Id.* ¶ 14 (emphasis added) (quotation simplified). It does not allow us to excuse a failure to file a notice of appeal from a final order simply because prejudice may be lacking.